IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  12-cv-00945-CMA-MEH

JOHN RAINEY,

   Plaintiff,

v.

BRYCE THORSTAD,
LYNNE TRAVIS,
JOSEPH SOTO,
SGT. MARQUEZ,
K. ROETKER, and
SGT. MONTGOMERY,

   Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
---

**Michael E. Hegarty, United States Magistrate Judge**.

   Before the Court is a Motion to Dismiss [filed August 10, 2012; docket #27] filed by

Defendants Thorstad, Travis, Soto, Marquez, Roetker, and Montgomery (collectively "Defendants").

The Motion has been referred to this Court for recommendation.  (Docket #29.)  Plaintiff filed a

response to the Motion on August 20, 2012; Defendants have elected not to file a reply.  Based on

the briefs as filed, the Court determines that oral argument would not materially assist its

adjudication of the Motion.  For the reasons set forth below, the Court RECOMMENDS

Defendants' Motion to Dismiss be **GRANTED**.[1]

---

   [1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file
any written objections in order to obtain reconsideration by the District Judge to whom this case is
assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings
or recommendations to which the objections are being made.  The District Court need not consider
frivolous, conclusive or general objections.  A party's failure to file such written objections to

## BACKGROUND

Plaintiff brings this lawsuit under 42 U.S.C. §1983 as a *pro se* litigant incarcerated in Colorado State Penitentiary.  Plaintiff filed his initial complaint on April 9, 2012, and an amended complaint on May 16, 2012, as ordered by Magistrate Judge Boland.  (Dockets ##1, 9, 10.)

Plaintiff claims Defendants deprived him of his Fifth, Eighth, and Fourteenth Amendment rights by attempting to perform "mouth sweeps" on various occasions to ensure Plaintiff was swallowing prescribed medications that Plaintiff alleges he was lawfully entitled to refuse.  (Docket #10 at 8-14.)  Plaintiff contends that such procedures are only permissible if the inmate is prescribed psychotropic medications; however, Plaintiff repeatedly asserts that "none of [his] medication is psychotropics (sic)."  (*Id.* at 5.)  According to Plaintiff, Defendants were not authorized to perform the mouth sweeps because they are not trained medical professionals.

As a result of Plaintiff's alleged refusal to permit the mouth sweeps, Plaintiff asserts that he was placed in "special control" with full restraints for two hours.  (*Id.* at 6.)  Plaintiff also claims he spent two hours in a cold cell where officers had previously "used the bathroom," and that the water in the cell had been turned off.  (*Id.*) While in the holding cell, on at least one occasion, Plaintiff alleges he was denied access to his nitroglycerine prescription until he complained that the prescription "was to be on [his] person."  (*Id.* at 7.)  In addition to altering the conditions of Plaintiff's confinement, Plaintiff appears to allege that Defendants falsely accused Plaintiff of

---

proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

various acts, including kicking an officer, smearing feces on prison staff, and submitting false reports. (*Id*. at 6-7.) Plaintiff does not describe any repercussions resulting from the alleged accusations.

From these facts, Plaintiff's amended complaint asserts six claims. In Claim One, Plaintiff seeks $5,000,000 in actual damages and $5,000,000 in punitive damages against Defendant Thorstad for alleged violations of Plaintiff's Fifth, Fourteenth, and Eighth Amendment rights. Claim Two seeks the same relief against Defendant Travis for the same alleged constitutional violations. In Claim Three, Plaintiff alleges that Defendant Soto violated his Fifth and Fourteenth Amendment rights, and seeks $1,000,000 in actual damages and $1,000,000 in punitive damages against Soto, accordingly. Plaintiff seeks the same relief against Defendant Marquez in Claim Four. Claim Five also seeks $1,000,000 in both actual and punitive damages against Defendant Roetker, but alleges Roetker violated Plaintiff's Fifth, Eighth, and Fourteenth Amendment rights. Finally, in Claim Six, Plaintiff alleges that Defendant Montgomery violated his Fifth, Eighth, and Fourteenth Amendment rights, and seeks $1,000,000 in actual damages and $1,000,000 in punitive damages. Plaintiff requests neither injunctive nor declaratory relief. (*See* docket #10 at 17.)

In response to Plaintiff's amended complaint, Defendants filed the pending motion to dismiss. Plaintiff submitted a timely response, and Defendants have not filed a reply.

## STANDARDS OF REVIEW

### I.    Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the

matter.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  A court lacking jurisdiction "must dismiss the cause *at any stage* of the proceeding in which it becomes apparent that jurisdiction is lacking."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (emphasis in original).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *See Basso*, 495 F.2d at 909.  Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.  Further, under a 12(b)(1) motion, "a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts."  *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)).  In such an instance, "a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion."  *Id.*

## II.      Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pleads facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129

4

S. Ct. at 1949.

The Rule 12(b)(6) evaluation requires two prongs of analysis.  First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory.  *Id.* at 1949–51.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id.* at 1951.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id.* at 1950.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 1949.

The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 129 S. Ct. at 1950.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief."  *Id.* (quotation marks and citation omitted).

## III.    Dismissal of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations

and citations omitted).  The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).  A dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281–82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

## DISCUSSION

Defendants' motion asserts that: (1) Plaintiff's claims against Defendants in their official capacities are barred by the Eleventh Amendment; (2) Plaintiff fails to state a viable claim for relief under the Eighth Amendment; (3) Plaintiff fails to state any claims under either the Fourteenth or Fifth Amendments; (4) Plaintiff fails to state any claim for retaliation; and (5) Defendants are entitled to qualified immunity.  The Court will begin by addressing the immunity defenses, determining first whether Defendants are entitled to sovereign immunity, and second, whether Defendants are entitled to qualified immunity.  Because the qualified immunity analysis includes an evaluation of the merits, the Court will address Defendants' second, third, and fourth arguments sequentially within the qualified immunity discussion.

6

I.      **Sovereign Immunity**

Defendants argue that Plaintiff's official capacity claims are barred by the Eleventh Amendment.  Though Plaintiff does not specify the capacity in which he sues Defendants, the Court construes his amended complaint liberally to assert claims against Defendants in both their official and individual capacities.

The Court agrees that Defendants are not subject to suit in their official capacities.  Claims against state officials in their official capacities are essentially claims against the state entity. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted).  It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state."  *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir.1994).  Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies.  *Blatchford v. Native Village of Noatak & Circle Village*, 501 U.S. 775, 785–86 (1991).  Section 1983 did not abrogate the Eleventh Amendment, nor does it provide a jurisdictional basis for suit against a state official acting in his or her official capacity.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff is seeking prospective enforcement of his or her federal rights.  *See Ex parte Young,* 209 U.S. 123, 159-60 (1908).  But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past"

or as a means for seeking money damages. *Buchwald v. Univ. of New Mexico Sch. of Med.,* 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

In this case, Plaintiff's amended complaint seeks only monetary damages as relief. (Docket #10 at 17.) Consequently, the Court finds that any claims for monetary damages brought against Defendants in their official capacities are barred by the Eleventh Amendment. The Court recommends that the District Court grant Defendants' motion in this regard and dismiss Plaintiff's claims for monetary relief against Defendants in their official capacities to the extent they are so alleged.

## II.     Qualified Immunity

Defendants assert an entitlement to qualified immunity with respect to each of Plaintiff's claims. Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). The privilege is an immunity from suit rather than a mere defense to liability. *Id.* When a defendant asserts the defense of qualified immunity at summary judgment, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

In determining whether Defendants are entitled to qualified immunity, the Court will

8

evaluate each alleged constitutional violation in turn.  To begin, the Court will analyze whether the facts alleged give rise to a plausible claim for relief under the Eighth Amendment. Next, the Court will consider Plaintiff's due process and equal protection claims under the Fourteenth Amendment. Finally, the Court will address whether Plaintiff has stated a plausible claim of retaliation.

      A.    <u>Eighth Amendment Claims</u>

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras,* 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)).  Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney,* 509 U.S. 25, 35 (1993); *Estelle,* 429 U.S. at 105.

Plaintiff must meet both the objective and subjective components constituting the test for Eighth Amendment deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).  The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id*. (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006)).  The subjective component is met if the plaintiff demonstrates that a defendant "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293).  The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting

9

*Farmer v. Brennan*, 511 U.S. 825, 838 (1994)).

Though Plaintiff does not specifically articulate distinct theories of liability under the Eighth Amendment, the Court construes his amendment complaint liberally to assert Eighth Amendment claims based on (1) Defendants' improper administration of prescription medications which caused Plaintiff to become ill; (2) the temporary denial of access to Plaintiff's nitroglycerine prescription; and (3) the conditions under which Plaintiff was allegedly confined after refusing to cooperate with the attempted mouth inspections.[2] With the aforementioned standards mind, the Court considers each theory in turn.

### i.     Administration of Prescription Medications

Several cases in the Tenth Circuit have addressed the merits of Eighth Amendment claims arising from allegedly improper prescriptions. *See Randall v. Board of Cnty. Comm'rs*, 184 F. App'x 723 (10th Cir. 2006) (finding that an inmate who suffered from hypoglycemia as a result of a change in his insulin prescription did not state a claim for relief under the Eighth Amendment); *see also Brown v. Prison Health Services*, 159 F. App'x 840 (10th Cir. 2005); *James v. Federal Bureau of Prisons*, 79 F. App'x 417 (10th Cir. 2003).  In *Brown*, the Tenth Circuit upheld the dismissal of an Eighth Amendment claim premised on an improper prescription.  159 F. App'x at 840-41.  Like the Plaintiff in this case, the prisoner in *Brown* reacted negatively to certain prescription medications.  *See id*.  Though there were notes in the plaintiff's medical file indicating his allergy to the particular drug he received, the *Brown* court dismissed the plaintiff's claim of

---

[2]In the Court's view, Plaintiff's claims regarding his right to refuse medical treatment are properly analyzed under the Fourteenth and not the Eighth Amendment. *See Pabon v. Wright*, 459 F.3d 241, 253 (2d Cir. 2006) (noting that the protections of the Eighth Amendment concern the wanton and unnecessary infliction of pain, while "the Fourteenth Amendment, by contrast, protects the individual's liberty interest in decisions that affect his health and bodily integrity.").

deliberate indifference, because the drug was administered under a different brand name than that listed in the medical file. *Id*. In so doing, the *Brown* court relied on the utter dearth of evidence with respect to the defendant's mental state. *Id*.

Published decisions from other circuits also emphasize the significance of a defendant's mental state in prescribing drugs to which inmates react adversely. In *Benson v. Cady*, 761 F.2d 1985 (7th Cir. 1985), the Seventh Circuit found that an inmate who received a psychiatric drug rather than a muscle relaxant had not alleged a constitutional violation. The *Benson* court acknowledged that a plaintiff may state a claim under the Eighth Amendment where the medical provider knew of and disregarded an inmate's allergy, but found that the particular plaintiff had failed to allege that the defendant physician "intentionally prescribed the incorrect medication or that he did so with the knowledge that it would harm [the plaintiff]." *Id*. at 34.

In addition to demonstrating that a defendant acted with deliberate indifference in prescribing a problematic medication, the Tenth Circuit has also underscored the importance of causation. *See Daniels v. Gilbreath*, 668 F.2d 477, 488-89 (10th Cir. 1982). In *Daniels*, the court reversed a jury verdict entered in favor of a father whose son died suddenly after a physician at a county jail injected him with a particular tranquilizer. *Id*. at 483-84. Despite evidence that the physician ignored warnings of the son's allergy to the tranquilizer, the *Daniels* court held that the facts did not support the jury's finding of a Eighth Amendment violation. *Id*. at 487. In so holding, the court emphasized that "[t]he causal element must, in a medical case like this, be proven by positive evidence." *Id*. at 488. Because the physicians who testified at trial were unable to provide an opinion on the cause of death, this "essential element" was not satisfied. *Id*. at 488-89.

At the outset, this case differs from those mentioned above in that Defendants were not

medical providers, and thus, were not responsible for the combination of prescriptions Plaintiff received. In this respect, Defendants appear to be even less mentally culpable than a physician who may have reason to know of the potential risks or side effects associated with certain medications. In any event, Plaintiff has not asserted, either directly or with facts, that the Defendants in this case had any reason to know that the medications they administered to Plaintiff might cause him to become ill.  Additionally, based on the facts asserted in the amended complaint, Court does not find even a shred of "positive evidence of the causal element" that would render Plaintiff's Eighth Amendment claim plausible under the law. *See Daniels*, 668 F.2d at 488-89.  Thus, the Court must recommend dismissal of any Eighth Amendment claim arising from Defendants' allegedly improper administration of medication.

ii.      *Denial of Nitroglycerine Prescription*

 Plaintiff alleges that Defendants temporarily deprived him of his nitroglycerine medication until he complained that it was to be "on [his] person."  (Docket #19 at 7.)  However, Plaintiff does not indicate the length of the deprivation or identify any harm that resulted therefrom.

Upon review of Plaintiff's amended complaint, the Court finds no indication that Plaintiff has suffered any injury as a result of the temporary denial of his nitroglycerine medication.  Thus, Plaintiff cannot meet the objective component of an Eighth Amendment claim on this basis.

iii.     *Conditions of Temporary Confinement*

To establish a conditions-of-confinement claim under the Eighth Amendment, "the complained-of conditions must be sufficiently serious so as to deprive inmates of civilized measures of life's necessities...[or] so as [to] constitute a substantial risk of serious harm." *Mauchlin v. Bier*, 07-cv-02593-CMA-MEH, 2010 WL 419397 (D. Colo. Jan. 28, 2010) (citation omitted in original).

In *Mauchlin*, Judge Arguello considered whether an inmate placed in a dry cell at temperatures as low as 40°F for over three days, wearing only boxer shorts and a t-shirt, could meet the objective requirements of the Eighth Amendment test. *Id*. at *2-4. On those facts, Judge Arguello found that the plaintiff's exposure to cold temperatures did not rise to the level of a constitutional violation. *Id*. at *4.

Similarly, a prisoner's exposure to foul odors does not, without more, support a claim under the Eighth Amendment. *See Williams v. McWilliams*, 20 F.3d 465, 1994 WL 121813, at *1 (5th Cir. 1994 (upholding the dismissal of an Eighth Amendment claim premised on the foul odor caused by a neighboring incontinent prisoner). Though the flooding of human waste into an inmate's cell may, depending on the duration of exposure, violate the Eighth Amendment, courts in this circuit have found that brief exposure to excrement contained in a toilet is not sufficiently serious to implicate constitutional protection. *See Purkey v. McKune*, No. 01-3019-JWL, 2005 WL 61497, at *4 (D. Kan. Jan. 11, 2005) (finding that an inmate's 72-hour exposure to a toilet containing human waste in a cell with poor ventilation did not violate the Eighth Amendment).

In this case, Plaintiff alleges that he was placed in a holding cell with cold temperatures and foul smells (allegedly caused by officers using the cell's bathroom) for up to four hours. Notably, Plaintiff's reported exposure to the conditions of the holding cell is far shorter than the duration of confinement in similar conditions upheld in *Mauchlin* and *Purkey*. Comparing the facts of this case to those considered by Judge Arguello in *Mauchlin* and those set forth in *Purkey*, the Court finds that Plaintiff has failed to allege sufficient harm to state a claim under the Eighth Amendment.

Upon review of the facts set forth Plaintiff's amended complaint and after consideration of each theory under which Plaintiff may intend to seek relief, the Court recommends that Plaintiff's

Eighth Amendment claims against all Defendants be dismissed.

      B.    <u>Fourteenth Amendment Claims</u>

Plaintiff alleges that Defendants violated his right to due process and equal protection by attempting to inspect his mouth after the administration of his medications. Likewise, Plaintiff asserts claims under both the Fifth and Fourteenth Amendments. Because the amended complaint contains neither facts nor allegations that would support a cause of action for double jeopardy or self-incrimination, the Court construes the amended complaint liberally to refer to the Fifth Amendment's due process and equal protection provisions. However, the Fifth Amendment is technically not the source of the constitutional guarantees invoked here; "only the Fourteenth Amendment imposes a due process requirement on state officials." *Ward v. Anderson*, 494 F.3d 929, 932 n.3 (10th Cir. 2007). This error does not affect the Court's decision. *See id.*

      *i.*    *Due Process*

Plaintiff relies heavily on the Supreme Court's decision in *Washington v. Harper*, 494 U.S. 210 (1990) in arguing that Defendants violated his right to due process of law in attempting to perform mouth sweeps under a protocol designed to regulate the administration of psychotropic medications. Plaintiff maintains that he has not been prescribed any psychotropic drugs, and thus, is not required to make his mouth available for inspection.

In *Harper*, Supreme Court established that "the forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty," and thus, triggers the protections of the due process clause. 494 U.S. at 229. Courts have interpreted this broadly to include a general right of inmates to refuse medical treatment. *See Alston v. Bendheim*, 672 F. Supp. 2d 378, 384 (S.D.N.Y. 2009) (citing *Harper*, 494 U.S. at 221) ("Inmates

have a constitutionally protected liberty interest in refusing medical treatment they are offered by correction officials."). However, an inmate's liberty interest "must be balanced against competing state interests to determine whether it is outweighed by the demands of an organized society." *Anglin v. City of Aspen*, 552 F. Supp. 2d 1229, 1246-57 (D. Colo. 2008) (quoting *Bee v. Greaves*, 744 F.2d 1387, 1394 (10th Cir. 1984)). The Tenth Circuit has found that an inmate's liberty interest in refusing medication may be overcome in emergency situations which threaten the safety and security of jail occupants. *Id.* Other circuits have also permitted the involuntary administration of medication where a prison official determines, in his or her professional judgment, that providing such treatment furthers a legitimate penological interest. *See Pabon*, 459 F.3d at 246.

Juxtaposed with the abundance of precedent supporting an inmate's general right to refuse medication is a growing body of law supporting the right and ability of prison officials to control the method and means by which medication is administered. The Supreme Court has recognized that "[m]aintaining safety and order of detention centers requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to problems." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 132 S. Ct. 1510, 1511 (2012). "A regulation impinging on an inmate's constitutional rights must be upheld if it is reasonably related to legitimate penological interests." *Id.* Within this framework, the Court has upheld the ability of prison officials to perform visual inspections of body cavities to discover and deter the smuggling of drugs or other prohibited items. *Id.*

The penological interests supporting cavity inspections also apply to inspections of an inmate's mouth to ensure the inmate has taken his or her medication as prescribed. *See Bilal v. New York State Dep't of Corr.*, 09 Civ. 8433(JSR)(AJP), 2010 WL 2506988, at *17 (S.D.N.Y. June 21,

2010) ("Like pat down and cell searches, mouth searches to verify that prisoners swallow their medication are conducted as part of regular security procedures to control contraband..."); *see also Bilal v. White*, No. 10-4594-pr, 2012 WL 3734376, at *3 n.3 (2d Cir. Aug. 30, 2012) (finding that a mouth check to ensure an inmate ingested his medication "could unquestionably have occurred based on proper reasons alone.") One court has noted that "a challenge to the practice [of mouth inspections] would fail because such inspections serve an obvious security need in jails and prisons." *Love v. Clark*, 11-cv-867, 2011 WL 6230785, at *2 (E.D. Wis. Dec. 8, 2011). The court in *Love* also found that "there is no basis for a claim based on who conducts the [mouth] inspection." *Id.*

In this case, Plaintiff adamantly denies that any of his medications are psychotropic. In discussing his current medications, Plaintiff not alleged a desire to alter or discontinue his current treatment regime. Rather, Plaintiff objects to Defendants' attempt to perform so-called mouth sweeps to ensure that Plaintiff's medications, once administered, are actually swallowed. While Plaintiff correctly asserts a right to refuse medication, the Court finds, and Plaintiff cites, no correlative right to store medications for later use, storage, or distribution to other inmates. In short, Plaintiff may, absent an emergency or court order, refuse medication prior to its administration. However, once Plaintiff accepts medication, he may not then refuse to make his mouth available for inspection.

In light of the growing body of law upholding the ability of prison officials to inspect an inmate's mouth following the administration of medication, the Court cannot find that Defendants violated clearly established law in performing the inspections described in Plaintiff's amended complaint. Morever, as noted by the court in *Love*, the Court sees no reason why an otherwise constitutional inspection would become problematic simply because Defendants are not medical

16

professionals. *See Love*, 2011 WL 6230785, at *2 ("there is no basis for a claim based on who conducts the [mouth] inspection.")  Guided by the Supreme Court's mandate that prison officials be given "substantial discretion to devise reasonable solutions to problems" in furtherance of the safety and security of prisons, the Court recommends that the District Court find that Defendants are entitled to qualified immunity with respect to Plaintiff's Fourteenth (and Fifth) Amendment due process claims arising from the performance of mouth sweeps as alleged in Plaintiff's amended complaint. *See Florence*, 132 S. Ct. at 1511.

      *ii.*    *Equal Protection*

      Plaintiff alleges generally that Defendants' attempted performance of mouth sweeps, and presumably Plaintiff's subsequent confinement, violated Plaintiff's right to equal protection. Because Plaintiff does not identify himself as a member of a suspect or quasi-suspect class, the Court construes his equal protection claim under the "class of one" theory recognized by the Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).

      In the Tenth Circuit, a class-of-one equal protection claim has two essential elements: "[f]irst, the plaintiff must establish that the government official or entity treated him differently from those who are similarly situated." *Highland Dev. Inc. v. Duchesne Cnty.*, 505 F. Supp. 2d 1129, 1150 (D. Utah 2007) (citing *Grubbs v. Bailes*, 445 F.3d 1275, 1282 (10th Cir. 2006)).  Second, the plaintiff must show "that the official action was *objectively* irrational and abusive..." *Id.* (emphasis in original) (quoting *Jicarrilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1209 (10th Cir. 2006)).

      Under the first element, Plaintiff "cannot prevail if there is *any* material difference between [him] and allegedly similarly situated parties that relates to a governmental interest." *Jicarrilla*

*Apache Nation*, 371 F.3d at 1212-13 (emphasis in original). Indeed, "it is imperative for the class-of-one plaintiff to provide a *specific* and *detailed* account of the nature of the preferred treatment of the favored class." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1214 (10th Cir. 2004) (emphasis added).

In this case, Plaintiff has not alleged that he is similarly situated to any inmates who were treated differently with respect to the official action described in the amended complaint. He has certainly failed to provide a "specific and detailed account" regarding the treatment of any other inmates, much less those who were treated with particular preference. Moreover, even if Plaintiff were singled out for a mouth sweep, he has not alleged or demonstrated that there was no objectively reasonable basis for Defendants' actions. To the contrary, the Court finds that Defendants acted reasonably in attempting to inspect Plaintiff's mouth for medication and subsequently confining Plaintiff for a short period of time after he refused to cooperate.

Upon review of Plaintiff's amended complaint, the Court finds no basis for an equal protection claim. Therefore, to the extent Plaintiff asserts a claim for equal protection under the Fourteenth Amendment, the Court recommends such claim be dismissed as to all Defendants.

C.     Retaliation Claim

Defendants contend that Plaintiff has not stated a claim for retaliation. Although Plaintiff does not explicitly assert a claim of this nature, he does allege that Defendants punished him for refusing to permit a mouth sweep.

The Tenth Circuit has adopted a three-part test which requires plaintiffs alleging retaliation to show:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a

18

person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

Plaintiff cites, and the Court finds, no legal authority indicating that a prisoner's refusal to cooperate with a mouth inspection upon the administration of medication is a constitutionally protected activity. However, at least one circuit court has found that mouth inspections similar to the one described in this case cannot support a claim of retaliation. *See Bilal v. White*, 2012 WL 3734376 at *3 n.3 ("subjecting [plaintiff] to a mouth check afer [he] received his medication...cannot sustain a retaliation claim...") Even under the most liberal construction of Plaintiff's pleadings, there is no evidence to plausibly support a claim of retaliation. Therefore, to the extent Plaintiff's amended complaint asserts such a claim, the Court recommends it be dismissed with respect to all Defendants.

## III.    Leave to Amend

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice. *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989). As such, in this jurisdiction, the Court typically does not dismiss a claim under Rule 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See Bellmon*, 935 F.2d at 1109-10.

In this case, the Court observes that Plaintiff has already been granted leave to amend. As noted above, Magistrate Judge Boland reviewed Plaintiff's initial complaint and identified several deficiencies. (*See* docket #9.) In directing Plaintiff to file an amended complaint, Magistrate Judge

19

Boland instructed Plaintiff to "state[] his claims clearly and concisely, assert[] what rights were violated, and allege[] specific facts demonstrating how named defendant personally participated in the asserted constitutional violations." (*Id*. at 4.)  In this way, Plaintiff has already received notice of potential deficiencies and an opportunity to amend.  *See Bellmon*, 935 F.2d at 1109-10. Additionally, the legal theories upon which Plaintiff attempts to proceed lack merit and would not be sufficiently enhanced by additional facts or embellishments.  Consequently, the Court recommends that the Plaintiff be denied further opportunity to amend his pleadings to assert additional claims against Defendants.

## CONCLUSION

For the reasons described above, the Court finds that Defendants are entitled to: (1) sovereign immunity for any official capacity claims Plaintiff asserts for money damages; and (2) qualified immunity with respect to Plaintiff's Eighth Amendment, due process, equal protection, and retaliation claims.  Therefore, the Court RECOMMENDS Defendants' Motion to Dismiss [filed August 10, 2012; docket #27] be **GRANTED** and that this action be dismissed in its entirety.

Dated and entered at Denver, Colorado, this 29th day of October, 2012.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

20